**Helen DONAHUE**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 74–3312.**

United States District Court, E. D. Pennsylvania.

April 14, 1976.

David C. Harrison, Philadelphia, Pa., for plaintiff.

Paul E. Holl, Asst. U.S. Atty., Robert E. J. Curran, U.S. Atty., E. D. Pa., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Presently before the Court are cross-motions of the parties for summary judgment on an appeal, pursuant to Section 205(g) of the Social Security Act, as amended, Title 42 U.S.C. § 405(g), of a final decision of the Secretary of Health, Education and Welfare denying the claimant disability benefits. The Administrative Law Judge's decision of August 9, 1974, holding that Mrs. Donahue was not entitled to disability benefits under Sections 216(i) and 223 of the Social Security Act, as amended, Title 42 U.S.C. §§ 416(i), 423, became the final decision of the Secretary in this case when the Appeals Council affirmed it on November 1, 1974.

Under Title 42 U.S.C. § 405(g), the Court's role in reviewing the Secretary's decision is delimited to making a determination as to whether or not there is substantial evidence in the record as a whole to support the finding of the Secretary that the claimant did not qualify for disability insurance benefits. In this regard, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it is more than a "scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Ginsburg v. Richardson,* 436 F.2d 1146, 1148 (3d Cir. 1971), cert. denied, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971), rehearing denied, 403 U.S. 912, 91 S.Ct. 2213, 29 L.Ed.2d 690 (1971). After a careful review of the record and briefs, and for the reasons discussed below, the Court finds that the Secretary's decision is not supported by substantial evidence, and therefore grants the claimant's motion for summary judgment.

## APPLICABLE LAW

■ The claimant has the burden of establishing that she was disabled within the meaning of the Social Security Act. *Reyes Robles v. Finch,* 409 F.2d 84 (1st Cir. 1969); *Mark v. Celebrezze,* 348 F.2d 289 (9th Cir. 1965). In order to meet this burden, the claimant must prove two things: first, that she has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months; and second, that the impairment renders her unable to engage in any substantial gainful employment. Title 42 U.S.C. § 423(d); *Baker v. Gardner,* 362 F.2d 864 (3d Cir. 1966); *Bujnovsky v. Celebrezze,* 343 F.2d 868 (3d Cir. 1965).

■ The Secretary must consider objective medical data and findings, expert medical opinions, subjective complaints, and the claimant's age, educational background, and work history in determining whether or not a person is able to engage in any substantial gainful employment. *DePaepe v. Richardson,* 464 F.2d 92 (5th Cir. 1972); *Dillon v. Celebrezze,* 345 F.2d 753 (4th Cir. 1965); *Barats v. Weinberger,* 383 F.Supp. 276 (E.D.Pa.1974). Furthermore, if a claimant demonstrates that an impairment is so severe that she can no longer perform the kind of work in which she has been engaged previously, the burden shifts to the Secretary to prove the availability of some other kind of substantial gainful employment which the claimant is able to perform. *Stark v. Weinberger,* 497 F.2d 1092 (7th Cir. 1974); *Hernandez v. Weinberger,* 493 F.2d 1120 (1st Cir. 1974).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

■ The claimant in this case, a school crossing guard who had previously worked as a packer in a pickle factory and as an inspector in a stocking factory, was fifty-eight years old at the time of the hearing before the Administrative Law Judge. Besides the claimant and her daughter, who appeared on behalf of the claimant, a voca-tional expert called by the Administrative Law Judge testified at the hearing. In addition to this testimony, the Administrative Law Judge in rendering his decision also considered the medical reports of Dr. Dante Bevilacqua, claimant's treating physician; Dr. Jay H. Davidson, who examined Mrs. Donahue at the request of the Disability Determination Section, Commonwealth of Pennsylvania; and Dr. Norman Learner, a medical adviser in the Social Security Program who reviewed the claimant's medical records but never examined her personally.

The Administrative Law Judge's findings demonstrate that the claimant met the first part of her burden of proving that she was disabled as a result of a medically determinable physical or mental impairment. In the evaluation of the evidence, the Administrative Law Judge stated that "the medical record reveals that there is a general agreement that the claimant has a hypertensive cardiovascular heart disease and left ventricular hypertrophy as supported by clinical findings of elevated blood pressure and . . . by x-ray and electrocardiogram. (N.T. 10). As to the second element of her burden, her ability to engage in substantial gainful employment, the Administrative Law Judge found that Mrs. Donahue could not return to her prior employment as a school crossing guard because such work required too much pressure in short periods of time for her condition to sustain. (N.T. 13).

As stated earlier, after the claimant established her inability to return to her prior employment, the burden shifted to the Secretary to demonstrate the availability of other gainful employment that the claimant could perform. The Administrative Law Judge found that this burden was met. Based on a vocational expert's response to a hypothetical question, the Administrative Law Judge held that Mrs. Donahue possessed the requisite physical and mental capacity to perform certain sedentary and light work jobs that existed in significant numbers in her region. (N.T. 13, 14). Thus, he concluded that:

the claimant has hypertensive vascular disease and left ventricular hypertrophy but her impairments are not of sufficient severity to prevent her from engaging in gainful work activities. (N.T. 14).

## DISCUSSION

The Administrative Law Judge's conclusion that the claimant could perform certain types of light or sedentary work was based on the written response to interrogatories submitted by Dr. Learner, a Social Security Program medical adviser. (N.T. 4). The vocational expert's testimony that certain available jobs were performable by the claimant was based on the key assumption that, consistent with the opinion of Dr. Learner, Mrs. Donahue's activity should be constrained only to the extent that she "should not engage in any strenuous physical exertion or activity such as heavy lifting, pushing, or running." [1]

All of the evidence, medical or otherwise, other than the conclusions drawn by Dr. Learner, are supportive of Mrs. Donahue's claim for disability insurance benefits. Her treating physician of ten years duration, Dr. Bevilacqua, reported that her "condition has become progressively worse, and it was necessary for her to stop working. It is my opinion that she will not be able to work indefinitely. Prognosis is guarded." (N.T. 120). Dr. Davidson's opinion, expressed after he examined the claimant, is consistent with that of Dr. Bevilacqua. His view was that Mrs. Donahue suffered from "hypertensive cardiovascular disease with cardiac enlargement," and that her condition "could result in a sudden acute episode associated with her hypertension, namely, an acute infarction or sudden CVA." (N.T. 95).

These medical judgments were supported by the testimony of the claimant and her daughter at the hearing before the Administrative Law Judge. (N.T. 6–23). For example, Mrs. Donahue described her physical complaints as follows:

if I walk a couple blocks, the muscles in my legs seem like they're giving out. And then I can't explain this feeling in my chest, like a cold feeling or something, I don't know, when I walk all day or get excited . . . [I]t's not a pain, it's just like a cold feeling or heartburn . . . I notice that when I walk a couple of blocks. (N.T. 39) [2]

■ As stated earlier, in spite of the testimony of Mrs. Donahue and her daughter, and of the medical reports submitted by the examining physicians, the Administra-

1. The hypothetical question answered by the vocational expert is as follows: I'm going to ask you to consider Mrs. Donahue's age, education and work background. I'm also going to ask you to consider the fact that her condition has been diagnosed as, some degree high blood pressure with resulting cardiac condition, we will not go into the specific diagnosis. I'm also going to ask you to assume that nervousness has been alluded too, although there is no specific diagnosis of an emotional or nervous condition and, whatever extent of nervousness the claimant has, there are no specific restrictions placed upon it. I'm also going to ask you to assume that I should find that among the medical evidences is a report of an examination by Dr. Davidson, in which he comments the cardiac condition is fairly well compensated although there was some problem with the elevated blood pressure. I'm also going to ask you to assume I should find that the treating physician, Dr. Bevilaqua [sic] in one of his reports has indicated that severe exertion produces shortness of breath. I'm also going to ask you to assume I should find that as a result of an analysis of all of the medical records in the case, Dr. Learner, a medical advisor has concluded that Mrs. Donahue should not engage in any strenuous physical exertion or activity such as heavy lifting, pushing, or running. Considering these restrictions, do you have an opinion as to whether or not there are jobs existing in both the claimant's region and in several other regions of the country, which the claimant can perform on a sustained basis and in competition with others. (N.T. 54)

2. The Administrative Law Judge failed to make a finding concerning the claimant's testimony as to her subjective complaints. If other factors were not determinative of this case, it would have to be remanded to determine whether the Administrative Law Judge disbelieved the claimant or whether he failed to recognize these subjective complaints as a basis to support a claim for benefits. *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1972); *Barats v. Weinberger,* 383 F.Supp. 276 (E.D.Pa.1974); *Human v. Weinberger,* Civil Action No. 74–855 (E.D.Pa.1976); *Davila v. Weinberger,* 408 F.Supp. 738 (E.D.Pa.1976).

848

tive Law Judge chose to rely on Dr. Learner's written report. The heavy weight given to his answers to interrogatories is impermissible because Dr. Learner neither personally examined the claimant nor testified at the administrative hearing. In *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the Supreme Court held that written reports by physicians who had examined a claimant seeking disability benefits were admissible and could constitute substantial evidence supportive of an adverse finding. 402 U.S. at 402, 91 S.Ct. 1420. The Court also stated that there was nothing unconstitutional or improper in permitting a medical adviser who had not examined a claimant to appear and testify at an administrative hearing. 402 U.S. at 408, 91 S.Ct. 1420.

This latter judicial statement possibly implies, although it is an open issue, that a non-examining adviser's testimony could constitute substantial evidence within the meaning of the Social Security Act. This issue is not before the Court, however, because Dr. Learner neither examined the claimant nor testified at the hearing. Thus, as Chief Judge Coffin stated in *Browne v. Richardson,* 468 F.2d 1003, 1006 (1st Cir. 1972), Dr. Learner's submitted report:

> lacks the assurance of reliability that comes on the one hand from first-hand observation and professional examination or, on the other, from first-hand testimony subject to claimant's cross-examination. It is hearsay based on hearsay. Thus, although the report may be admissible in light of *Perales,* it cannot be the substantial evidence needed to support a finding. See also *Webb v. Weinberger,* 371 F.Supp. 793 (N.D.Ind.1974); *Collins v. Richardson,* 334 F.Supp. 1333 (D.S.C. 1971).

The acute dangers in relying too heavily on the written submission of a non-examining, non-testifying medical adviser are apparent in a case such as this one where the claimant's primary symptoms are in the emotional sphere and not readily determinable from x-rays or laboratory reports.

(N.T. 95). See, *Webb v. Weinberger,* 371 F.Supp. at 798.

 In conclusion, since the claimant sustained her burden of establishing that she suffers from a medical impairment which prevents her from engaging in her occupation as a school crossing guard, and since the Administrative Law Judge's finding that the claimant could perform other available jobs offering substantial gainful employment was not supported by substantial evidence, the claimant's motion for summary judgment is granted.